**United States District Court**
For the Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| DFSB KOLLECTIVE CO., LTD., JUNGLE ENTERTAINMENT, WOOLIM ENTERTAINMENT, AFTERNOON MUSIC ENTERTAINMENT, INC., BOOHWAL ENTERTAINMENT, and LOVEROCK COMPANY, | Case No.: 11-CV-01049-LHK |
| Plaintiffs, | ORDER GRANTING MOTION FOR DEFAULT JUDGMENT |
| v. | |
| KENNY TRAN, an individual, and D/B/A IHONEYJOO.COM and IHONEYDEW.COM, and Does 1 through 10, inclusive, | |
| Defendants. | |

Plaintiffs DFSB Kollective Co., Ltd. ("DFSB"), Jungle Entertainment, Woolim Entertainment, Afternoon Music Entertainment, Inc., Boohwal Entertainment, and Loverock Company (collectively "Plaintiffs"), move for default judgment against Defendant Kenny Tran d/b/a ihoneyjoo.com and ihoneydew.com ("Defendant" or "Tran"). For the reasons set forth below, the Court GRANTS Plaintiffs' motion for default judgment, permanent injunction, statutory damages, and post-judgment interest.

## I.    Background

All Plaintiffs in this action are Korean corporations with their principal places of business in Seoul, Korea. *See* Complaint ("Compl.") ¶¶ 7-12. Plaintiffs Jungle Entertainment, Woolim Entertainment, Afternoon Music Entertainment, Inc., Boohwal Entertainment, and Loverock

1    Company own Korean pop music recordings and are copyright claimants to those musical

2    recordings and associated artwork.  Compl. ¶¶ 8-12.  These Plaintiffs have delegated to DFSB

3    primary responsibility for enforcing their copyrights online.  Compl. ¶¶ 8-12.

4            Defendant Kenny Tran, a resident of Australia, operates several different websites,

5    including ihoneyjoo.com and ihoneydew.com (the "websites").  Compl. ¶ 17.  Additionally, Tran,

6    operating under several different aliases, is a member of the online social networking sites

7    Facebook and Twitter; the online video community YouTube; and various web lockers or online

8    storage sites, including Mediafire.com.  Compl. ¶ 17.  Defendant uses the services of Twitter,

9    Facebook, and YouTube to advertise and direct people to his websites.  Compl. ¶ 19.

10           Defendant uses his websites to disseminate to internet users content, in the form of both

11   music and accompanying artwork, that has been unlawfully copied.  Compl. ¶ 19.  To listen to or

12   download an infringing copy of a work, the user clicks on a link next to an image of the

13   copyrighted album cover.  Compl. ¶ 22.  The user is then directed to a third-party website where

14   the user may download the album that was uploaded onto the third-party website by Plaintiff.

15   Compl. ¶ 23.  Users are able to download unauthorized copies of the DFSB Plaintiffs' copyrighted

16   material without Plaintiffs' permission.  Compl. ¶ 23.

17           Defendant's websites and accounts on third party websites (including Twitter, Facebook,

18   and YouTube) provide instructions or assistance to users encountering problems downloading the

19   Korean music, and allow users to make requests for additional music.  B. Cho Decl. ¶ 5.

20   Defendant's websites also contain advertisements, from which Defendant is able to derive revenue.

21   Compl. ¶ 22.  Defendant also uses PayPal to solicit donations from users.

22           Plaintiffs have identified, and attached to their complaint as Exhibit A, a list of 129

23   copyrighted works owned by the Plaintiffs and allegedly pirated by the Defendant in the method

24   identified above.  *See* Compl. Ex. A, ¶ 13, 21.  In 2009 and 2010, DFSB, through its representative,

25   investigated Tran's allegedly infringing online activities.  J Cho. Decl. ¶ 3; B. Cho Decl. ¶ 6.  After

26   identifying the Plaintiffs' copyrighted materials on websites operated by Defendant, "[n]umerous

27   notices were sent to Defendant through his third-party service providers regarding his copyright

28   infringement," requesting that the infringing content be removed.  B. Cho Decl. ¶ 6, Ex. B, E.

Case No.: 11-CV-01049-LHK
ORDER GRANTING DEFAULT JUDGMENT

*United States District Court*
*For the Northern District of California*

DFSB declares that Defendant avoids these notices by "simply open[ing] new accounts or shift[ing] his current accounts to new hosts." B. Cho Decl. ¶ 6; J Cho. Decl. ¶ 3. In addition, Plaintiffs have declared that they believe that Tran is "one of the biggest illegal uploaders (and free download link providers) of Korean music in the world." B. Cho Decl. ¶ 8. Indeed, iHoneyJoo.com generated more online traffic than the top 3 legitimate Korean music portal sites combined. B. Cho Decl. ¶ 8.

Plaintiffs filed their complaint on March 7, 2011. ECF No. 1. On June 28, 2011, Plaintiffs filed a proof of service showing that the summons and complaint had been personally served on Defendant in New South Wales, Australia. On July 21, 2011, Plaintiffs filed a request for the Clerk's office to enter default. The Clerk filed a notice of entry of default on July 27, 2011. On September 12, 2011, Plaintiffs filed a motion for default judgment. Defendant has not filed an opposition to the motion for default judgment, nor has Defendant filed an answer, a Rule 12 motion, or otherwise made an appearance in this case.

## II.      Analysis

Under Federal Rule of Civil Procedure 55(b)(2), a party may apply to the court for entry of judgment by default. "The district court's decision whether to enter a default judgment is a discretionary one." *Aldabe v. Aldabe*, 616 F.2d 1089, 1092 (9th Cir. 1980). When a court is considering whether to enter a default judgment, it has "an affirmative duty to look into its jurisdiction over both the subject matter and the parties." *In re Tuli,* 172 F.3d 707, 712 (9th Cir. 1999). First the Court determines whether it has personal jurisdiction over Defendant, and whether process was properly served on Defendant. Then the Court analyzes whether to grant a default judgment against Defendant.

### A.  Personal Jurisdiction

"Personal jurisdiction over an out-of-state defendant is appropriate if the relevant state's long arm-statute permits the assertion of jurisdiction without violating federal due process." *Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 800-01 (9th Cir. 2004). Because California's long arm statute is co-extensive with federal due process requirements, the jurisdictional analyses under California law and federal due process are the same. *Id.* at 801; Cal.

Case No.: 11-CV-01049-LHK
ORDER GRANTING DEFAULT JUDGMENT

Code Civ. Proc. § 410.10.  The Due Process Clause requires that nonresident defendants have certain "minimum contacts" with the forum state, "such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice." *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945) (internal citations and quotation marks omitted).

The Ninth Circuit employs a three-part test to determine whether a party has sufficient minimum contacts to be susceptible to specific[1] personal jurisdiction:

> (1) The non-resident defendant must purposefully direct his activities or consummate some transaction with the forum or resident thereof; or perform some act by which he purposefully avails himself of the privilege of conducting activities in the forum, thereby invoking the benefits and protections of its laws;
>
> (2) the claim must be one which arises out of or relates to the defendant's forum-related activities; and
>
> (3) the exercise of jurisdiction must comport with fair play and substantial justice, i.e. it must be reasonable.

*Schwarzenegger*, 374 F.3d at 802.  The first factor is satisfied by either purposeful availment or purposeful direction.  *Brayton Purcell LLP v. Recordon & Recordon*, 606 F.3d 1124, 1128 (9th Cir. 2010).  Purposeful availment typically consists of action taking place in the forum that invokes the benefits and protections of the laws of the forum, such as executing or performing a contract within the forum.  *Schwarzenegger*, 374 F.3d at 802.  To establish purposeful availment, a plaintiff must show that the defendant "engage[d] in some form of affirmative conduct allowing or promoting the transaction of business within the forum state." *Gray & Co. v. Firstenberg Mach. Co.*, 913 F.2d 758, 760 (9th Cir. 1990).  Purposeful direction, by contrast, usually consists of evidence of the defendant's actions outside the forum state that are directed at the forum, such as the distribution in the forum state of goods originating elsewhere.  *Schwarzenegger*, 374 F.3d at 803.  "A purposeful availment analysis is most often used in suits sounding in contract.  A purposeful direction analysis, on the other hand, is most often used in suits sounding in tort." *Schwarzenegger*, 374 F.3d at 802.  Where, as here, the underlying action is copyright infringement, purposeful direction is the proper analytical framework.  *Brayton Purcell LLP*, 606 F.3d at 1128.

---

[1] Plaintiffs do not argue, and therefore this Court does not address, whether general subject matter jurisdiction applies.

4

Case No.: 11-CV-01049-LHK
ORDER GRANTING DEFAULT JUDGMENT

**United States District Court**
For the Northern District of California

### 1. Purposeful Availment

This court evaluates purposeful direction using the three-part "*Calder*-effects" test.  *See Schwarzenegger*, 374 F.3d at 803; *see also Calder v. Jones,* 465 U.S. 783 (1984).  Under this test, "the defendant allegedly must have (1) committed an intentional act, (2) expressly aimed at the forum state, (3) causing harm that the defendant knows is likely to be suffered in the forum state." *Yahoo! Inc. v. La Ligue Contre Le Racisme Et L'Antisemitisme*, 433 F.3d 1199, 1206 (9th Cir. 2006) (en banc) (internal quotation marks omitted).

#### a. Intentional Act

The Ninth Circuit has construed intent as referring to "an intent to perform an actual, physical act in the real world, rather than an intent to accomplish a result or consequence of that act." *Brayton Purcell LLP*, 606 F.3d at 1128.  Based on the Ninth Circuit's construction of "intentional act," Tran's uploading of copyrighted material on both his own websites, and onto YouTube, Facebook, and Twitter; his indexing and inducing users to download copied material from his website; and his advertising activities on his own websites are sufficient to establish intentional acts.

#### b. Expressly Aimed at Forum State

"Whether activities undertaken through internet websites are aimed expressly at a forum state is assessed under the *Cybersell* framework." *Adobe Systems Inc. v Childers*, No. 10-CV-03571-JF, 2011 WL 566812, at *4 (N.D. Cal. Feb. 14, 2011).  Under *Cybersell*, mere operation of a passive website is insufficient to establish personal jurisdiction over a defendant, while operation of an interactive, commercial website often is sufficient.  *Cybersell, Inc. v. Cybersell, Inc.*, 130 F.3d 414, 418 (9th Cir.1997).  "[T]he likelihood that personal jurisdiction can be constitutionally exercised is directly proportionate to the nature and quality of the commercial activity that an entity conducts over the Internet." *Cybersell, Inc.*, 130 F.3d at 419 (quoting *Zippo Mfg. Co. v. Zippo Dot Com, Inc.*, 952 F. Supp. 1119, 1124 (W.D. Pa. 1997)). "The fact that an essentially passive Internet advertisement may be accessible in the plaintiff's home state without 'something more' is not enough to support personal jurisdiction." *Facebook, Inc. v. Teachbook.com, LLC*, No. CV 10-03654 RMW, 2011 WL 1672464 (N.D. Cal. May 3, 2011) (citing *Cybersell, Inc.*, 130 F.3d at 414).

5

Case No.: 11-CV-01049-LHK
ORDER GRANTING DEFAULT JUDGMENT

1    Here, the allegations and evidence presented by Plaintiffs in support of the motion for

2    default judgment are sufficient to show that Tran expressly aimed his conduct at California.  As

3    explained above, Defendant operates several highly interactive websites that allow him to infringe

4    on DFSB Works.  *See* J. Cho Decl. ¶¶ 2-3, Ex. A.  The copies of web pages provided to the Court

5    establish that the websites are, in fact, interactive.  *See* J. Cho Decl. Ex. A.  In contrast to the

6    website in *Cybersell*, the websites at issue here are more than merely a passive conduit for

7    information to internet users.  Instead, the websites run by Tran allow users to request music, and

8    personally download the information.  Moreover, it appears as though Defendant has specifically

9    used several California companies to further his scheme of perpetrating illegal downloads.  Tran

10   uses California companies Facebook, Twitter, and YouTube to promote the websites he operates,

11   and to allow users access to the pirated copies of the copyrighted music and artwork.  Additionally,

12   it appears as though Defendant uses a privacy service located in California to shield his identity.

13   Drey Decl. ¶ 2.   In light of the nature of the websites run by Defendant, it appears that Defendant's

14   activities are expressly aimed at California.

15                  **c.  Causing Harm Likely to be Suffered in the Forum State**

16          This subfactor is often met in intellectual property cases by a plaintiff bringing suit in its

17   home forum against an out-of-state defendant alleging that the defendant engaged in infringing

18   activities knowing that plaintiff was located in the forum.  *Amini Innovation Corp. v. JS Imports*

19   *Inc.*, 497 F. Supp. 2d 1093, 1106 (C.D. Cal. 2007).  DFSB and the other plaintiffs, however, are not

20   residents of California.  Nonetheless, Defendant likely knew that his activities would cause harm in

21   California.  Tran relied on several California companies to further his scheme of providing

22   copyrighted music to a world-wide audience of users.  Additionally, given the evidence provided

23   by Plaintiffs of the reach of Defendant's activities, Tran likely knew that harm – in the form of

24   distribution and download of copyright protected material – would be suffered in the forum state.

25                  **2.  Claims Arise out of Forum Related Activities**

26          The second prong of the test for specific jurisdiction requires that the claim be one that

27   arises out of or relates to the defendant's activities in the forum.  *Panavision v. Toeppen,* 141 F.3d

28   1316, 1320 (9th Cir. 1998).  This requires a showing of "but for" causation.  *Id.* at 1322 ("We must

6

determine if the plaintiff Panavision would not have been injured 'but for' the defendant Toeppen's conduct directed toward Panavision in California."). Here, Defendant's contacts with the forum are the use of California companies to allow third party users to download the copyright infringing works. The Court finds that "but for" Defendant's infringing activity in California, Plaintiffs would not have been injured. Accordingly, the second requirement for specific jurisdiction is satisfied.

### 3. Reasonableness of Exercise of Jurisdiction

The third prong of the test for specific jurisdiction provides that the exercise of jurisdiction must comport with fair play and substantial justice. *Id.* at 1320. The Ninth Circuit employs a seven factor test to determine whether exercise of jurisdiction is reasonable. These factors are: (1) the extent of the defendant's purposeful interjection into the forum state's affairs; (2) the burden on the defendant of defending in the forum (3) the extent of conflict with the sovereignty of the defendant's state; (4) the forum state's interest in adjudicating the dispute; (5) the most efficient judicial resolution of the controversy; (6) the importance of the forum to the plaintiff's interest in convenient and effective relief; and (7) the existence of an alternative forum. *Core-Vent Corp. v. Nobel Indus.*, 11 F.3d 1482, 1487-88 (9th Cir. 1993). Once the first two prongs of the specific jurisdiction test have been met, the burden shifts to the defendant to establish unreasonableness. *See Schwarzenegger*, 374, F.3d at 802 (stating that after the plaintiff meets his burden to satisfy the first two prongs, the burden then shifts to the defendant to present a "compelling case" that jurisdiction is unreasonable). Defendant has not responded to the Plaintiffs' motion for default judgment, and so has not met his burden of establishing unreasonableness.

First, the forum state has an interest in adjudicating the dispute. Although none of the parties is a California citizen, Plaintiffs allege that Defendant (1) uses California companies to perpetuate his copyright infringement, and (2) based on the reach of his websites encourages California residents to download pirated music. This factor thus favors a finding that the exercise of jurisdiction is reasonable.

7

Case No.: 11-CV-01049-LHK
ORDER GRANTING DEFAULT JUDGMENT

Second, the extent of Defendant's purposeful interjection into the forum state's affairs is unknown as Plaintiffs have not alleged or presented evidence regarding the number of downloads conducted by California residents.  Therefore, this factor is neutral.

Third, the burden on the Defendant, as a resident of Australia, to litigate in California is significant.  Nonetheless, the inconvenience is not so great as to deprive him of due process, particularly given Tran's purposeful availment of the benefits of conducting business within California.  *See Panavision*, 141 F.3d at 1323 ("A defendant's burden in litigating in the forum is a factor in the assessment of reasonableness, but unless the inconvenience is so great as to constitute a deprivation of due process, it will not overcome clear justifications for the exercise of jurisdiction.").

Fourth, consideration of the most efficient judicial resolution is "no longer weighed heavily given the modern advances in communication and transportation," therefore, this factor is also neutral because there may be witnesses and evidence located in California, Korea, and Australia.  *Id.*

Fifth, with respect to the existence of an alternative forum, Defendant has not come forward to request an alternative forum.  Nor is it clear whether Plaintiffs would be able to bring their claims for infringement of United States copyrights in a Korean or Australian forum, or in the forum of another U.S. state.  This factor is neutral.

Sixth, with respect to the importance of the forum to the Plaintiffs' interest in convenient and effective relief, courts generally give little weight to a plaintiff's inconvenience of litigating in another forum.  *See id.* at 1324.  Given that Plaintiffs are non-residents, Plaintiffs' inconvenience in litigating in another forum is a neutral factor.  Finally, regarding the extent to which the exercise of jurisdiction would conflict with the sovereignty of Defendant's state, "[l]itigation against an alien defendant creates a higher jurisdictional barrier than litigation against a citizen from a sister state because important sovereignty concerns exist."  *Harris Rutsky & Co. Ins. Servs., Inc. v. Bell & Clements Ltd.*, 328 F.3d 1122, 1133 (9th Cir. 2003) (quoting *Sinatra v. Nat'l Enquirer*, 854 F.2d 1191, 1199 (9th Cir. 1988)).  While this factor weighs in favor of the Defendant, it is not sufficient to defeat the Court's otherwise proper exercise of personal jurisdiction.

Case No.: 11-CV-01049-LHK
ORDER GRANTING DEFAULT JUDGMENT

1

2          Balancing these seven factors, the Court concludes that the exercise of jurisdiction over the

3   Defendant is not unreasonable.  Accordingly, the Court finds that it has personal jurisdiction over

4   the Defendant.

5                    **B.  Service of Process**

6          In addition to assessing whether jurisdiction is proper, a court must also determine whether

7   the service of process on the party against whom default judgment is requested is adequate.

8   *Bricklayers and Allied Craftworkers Local Union No. 3 v. Palomino,* 2010 WL 2219595 at * 2

9   (N.D. Cal. June 2, 2010) (citations omitted).  Defendant Tran is an individual resident of New

10  South Wales, Australia.  Compl. ¶ 17. Pursuant to the Federal Rules of Civil Procedure, an

11  individual may be served by an internationally agreed upon means of service that is reasonably

12  calculated to give notice, "such as those authorized by the Hague Convention on the Service

13  Abroad of Judicial and Extrajudicial Documents," ("Hague Convention").  Fed. R. Civ. P. 4(f)(1).

14  Australia is a party to the Hague Convention.  *See* Drey Decl. ¶ 3; *Hadjdjelloul v. Global*

15  *Machinery Co.*, No. 10-4782 (DSD/SER), 2011 WL 4860025, at *3 n.6 (D. Minn. Oct. 7, 2011).

16  Both the Hague Convention, and the rules of civil procedure in New South Wales allow personal

17  service of process on an individual by private-process server.  *See id.* (noting that service of

18  process in Australia "must comply with the Hague Service Convention, be performed through

19  diplomatic channel or be carried out by private-process server"); Drey Decl. Exs. K, L.  Tran was

20  personally served by a licensed Australian process server on June 21, 2011.  *See* ECF No. 10.

21  Accordingly, service of process was proper.

22                   **C.  Default Judgment Factors**

23         In determining whether default judgment is appropriate, courts typically consider the

24  following factors: (1) the possibility of prejudice to plaintiff, (2) the merits of plaintiff's

25  substantive claim, (3) the sufficiency of the complaint, (4) the sum of money at stake in the action,

26  (5) the possibility of a dispute concerning the material facts, (6) whether the default was due to

27  excusable neglect, and (7) the strong policy underlying the Federal Rules of Civil Procedure

28  favoring decisions on the merits.  *Eitel v. McCool*, 782 F.2d 1470, 1471-72 (9th Cir. 1986).

Case No.: 11-CV-01049-LHK
ORDER GRANTING DEFAULT JUDGMENT

*United States District Court*
For the Northern District of California

United States District Court
For the Northern District of California

### 1. Merits of Plaintiff's Claims and Sufficiency of the Complaint

After entry of default, "well-pled allegations in the complaint regarding liability are deemed true." *Fair Housing of Marin v. Combs*, 285 F.3d 899, 906 (9th Cir. 2002). The Court will therefore consider the merits of Plaintiffs' claims, the sufficiency of its pleadings, and the possibility of a dispute concerning the material facts, together. In addition to the allegations in their Complaint, Plaintiffs also submitted documentation of Defendant's websites and accounts, take down notices sent to service providers, as well as detailed declarations documenting DFSB's investigation of Defendant's activities. The Court will also consider these submissions in evaluating the merits of Plaintiffs' substantive claims.

#### a.  Copyright Infringement

Plaintiffs' first cause of action asserts copyright infringement in violation of 17 U.S.C. § 501. The Copyright Act grants the copyright owner the exclusive right to reproduce a copyrighted work, to distribute copies of the work, and to authorize reproduction or distribution. *See* 17 U.S.C. § 106(1)-(3). To establish copyright infringement, a plaintiff must prove: (1) ownership of a valid copyright, and (2) that the defendant violated at least one exclusive right granted to plaintiff under 17 U.S.C. § 106. *A & M Records, Inc. v. Napster, Inc.*, 239 F.3d 1004, 1013 (9th Cir. 2001). Plaintiffs have met this standard. As to the first element, the Complaint alleges that Plaintiffs own copyrights in at least 129 different song titles on 11 different albums. *See* Compl. & Ex. A. These copyrights are registered with the Copyright Office, and Plaintiffs have provided the registration certificates for all 11 albums (which contain all 129 songs). *See* B. Cho Decl. Ex. C. As to the second element of infringement, Plaintiffs allege that Defendant made unauthorized copies of the musical recordings of the DFSB Plaintiffs' works and uploaded them for distribution and that the uploaded songs are identical to Plaintiffs' copyrighted works. Compl. ¶¶ 17, 23. Plaintiffs have also provided a declaration, with supporting exhibits[2] stating that Plaintiffs' investigation identified the copyrighted titles available online. B. Cho Decl. ¶ 7 & Exs.

---

[2]  It is difficult to identify, based on the exhibits, precisely which songs are available where. However, the Court finds that the declarations sufficiently establish that the copyrighted works were copied and uploaded.

Case No.: 11-CV-01049-LHK
ORDER GRANTING DEFAULT JUDGMENT

A, B, D, E.  These allegations, taken as true, are sufficient to establish a claim for copyright

infringement pursuant to 17 U.S.C. § 501.

### b.  Contributory Copyright Infringment

Plaintiffs' second claim is for contributory copyright infringement.  A defendant is

contributorily liable for copyright infringement if the defendant knowingly induces, causes, or

materially contributes to the infringing conduct of another.  *Ellison v. Robertson*, 357 F.3d 1072,

1076 (9th Cir. 2004) (internal citation omitted).  Plaintiffs sufficiently allege a claim for

contributory copyright infringement.  First, Plaintiffs allege that the third party websites through

which Defendant has an account, host and distribute the infringing content described above, in

violation of 17 U.S.C. § 501.  Compl. ¶ 36; B. Cho. Decl. Ex. D.  Plaintiffs further allege that

Defendant contributes to this infringing conduct by uploading the content onto these third party

websites, and by indexing the works and providing access to the third-party websites from his own

websites.  Compl. ¶ 35.

Finally, Plaintiffs allege that Defendants know that the files hosted on third-party websites

are infringing because he has received notices from the Plaintiffs and the third party hosts alerting

him to the unauthorized and infringing conduct. Compl. ¶ 36.  Thus, Plaintiffs have established that

Defendant knew or had reason to know of the infringing activity to which he was contributing on

the third party websites.  Based on Plaintiffs' allegations, the Court finds that Plaintiffs have

adequately pled a claim for contributory copyright infringement.  Further, taking these allegations

as true, Plaintiff has demonstrated it is likely to succeed on this claim.

### c.  Inducement of Copyright Infringement

Plaintiffs' final claim is for inducement of copyright infringement.  *See* Compl. ¶¶ 42-48.

However, there is some doubt as to whether this is a separate cause of action or more properly

considered a species of contributory infringement.  The Supreme Court explained that "[o]ne

infringes contributorily by intentionally inducing or encouraging direct infringement." *Metro-

Goldwyn-Mayer Studios Inc. v. Grokster*, Ltd., 545 U.S. 913, 930 (2005).  In *Grokster*, the Court

discussed an "inducement rule," finding that "one who distributes a device with the object of

promoting its use to infringe copyright, as shown by clear expression or other affirmative steps

11

Case No.: 11-CV-01049-LHK
ORDER GRANTING DEFAULT JUDGMENT

United States District Court
For the Northern District of California

United States District Court
For the Northern District of California

1    taken to foster infringement, is liable for the resulting acts of infringement by third parties." *Id.* at

2    936-37.  In light of the Supreme Court's discussion, several courts have expressed doubt that

3    inducement of infringement states a separate claim for relief.  *See, e.g., IO Group, Inc. v. Jordan*,

4    708 F. Supp. 2d 989, 999 (N.D. Cal. 2010); *Capitol Records, Inc. v. MP3tunes, LLC*, 2009 WL

5    3364036, at *4 (S.D.N.Y. 2009); *Arista Records LLC v. Usenet.com*, 2009 WL 1873589, at *18 n.

6    17 (S.D.N.Y. 2009).  This Court acknowledges that inducement of copyright infringement may not,

7    in fact, be a valid cause of action.  In light of the fact that it does not appear that Plaintiffs seek

8    additional damages or relief under this cause of action, however, the Court need not rule on this

9    issue.

10                        **2.  Remaining *Eitel* Factors**

11                        Based on the above analysis, the Court concludes that Plaintiffs' well-pleaded complaint

12   and the merits of its substantive claims favor entry of default judgment.  The Court also finds that

13   weighing the remaining *Eitel* factors together support Plaintiffs' motion.  First, Plaintiffs will be

14   prejudiced if default judgment is not entered.  Because Defendant has refused to respond to the

15   Complaint or otherwise take part in the litigation, Plaintiffs will be denied the right to adjudicate

16   their claims and obtain relief if default judgment is not granted.  Second, as to the sum of money at

17   stake, Plaintiffs seek $645,000.00 in statutory damages.  Although entry of default judgment may

18   not be appropriate where a large sum of money is at stake, *see Eitel v. McCool*, 782 F.2d at 1472,

19   here the damages sought are statutory, and the amount is left to the Court's discretion.  Third, given

20   the supporting documentation submitted by Plaintiffs, and the relatively straightforward nature of

21   Plaintiffs' claims, it appears unlikely that a dispute of material fact would arise in this case.

22   Fourth, it does not appear that Defendants' default was due to excusable neglect.  Defendant was

23   personally served with the Summons and Complaint on June 21, 2011.  Moreover, Defendant was

24   also served with the Request for Entry of Default.  Drey Decl. at ¶ 6.  Defendants thus had notice

25   and opportunity to appear in this litigation before Plaintiffs moved for default judgment.  Finally,

26   although federal policy favors decisions on the merits, it does not appear that resolution on the

27   merits will be possible in this case.  Based on this analysis of the *Eitel* factors, the Court concludes

28   that entry of default judgment is appropriate and GRANTS the motion for default judgment.

12

Case No.: 11-CV-01049-LHK
ORDER GRANTING DEFAULT JUDGMENT

United States District Court
For the Northern District of California

### D.  Determination of Relief

In its motion for default judgment, Plaintiffs seek a permanent injunction, statutory damages in the amount of $645,000 based on 129 instances of copyright infringement, and post-judgment interest.   The Court will consider each form of requested relief in turn.

#### 1.  Injunctive Relief

Plaintiffs seek the issuance of a permanent injunction.  The Copyright Act, 17 U.S.C. § 502(a), permits the issuance of a permanent injunction to prevent future infringement.  A plaintiff seeking a permanent injunction must demonstrate: "(1) that it has suffered an irreparable injury; (2) that remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (3) that, considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted; and (4) that the public interest would not be disserved by a permanent injunction."  *eBay Inc. v. MercExchange, L.L.C.*, 547 U.S. 388, 391 (2006).

In this case, each of these four factors supports granting a permanent injunction.  With regard to the first two factors, Plaintiffs have established that absent an injunction they will suffer irreparable harm and that money damages are not adequate.  Plaintiffs have established that Tran is "one of the biggest illegal uploaders (and free download link providers) of Korean music in the world." B. Cho Decl. ¶ 8.  Indeed, iHoneyJoo.com generated more online traffic than the top 3 legitimate Korean music portal sites combined. B. Cho Decl. ¶ 8.  This type of infringing conduct exposes Plaintiffs to "massive, repeated, and worldwide infringement" of their copyrighted sound recordings.  *Twentieth Century Fox Film Corp. v. Streeter*, 438 F. Supp. 2d 1065, 1073 n.2 (D. Ariz. 2006) ("When digital works are distributed via the internet, as in this case, every downloader who receives one of the copyrighted works from Defendant is in turn capable of also transmitting perfect copies of the works. Accordingly, the process is potentially exponential rather than linear, threatening virtually unstoppable infringement of the copyright.") (quoting *A & M Records, Inc. v. Napster, Inc.,* 239 F.3d 1004, 1013-14 (9th Cir. 2001)).  Monetary damages cannot adequately compensate this infringement.

Case No.: 11-CV-01049-LHK
ORDER GRANTING DEFAULT JUDGMENT

As to the third factor, while Plaintiffs will be harmed by continued infringement, there appears to be no harm to Defendants in issuing an injunction. This is because an injunction would merely require them to comply with the Copyright Act. As to the fourth factor, a permanent injunction would likely serve the public interest by "upholding" the rights that "Congress has elected to grant . . . to the owner of a copyright in a protected work." *Apple Computer, Inc. v. Franklin Computer Corp.*, 714 F.2d 1240, 1255 (3d Cir. 1983) (quoting *Klitzner Industries, Inc. v. H. K. James & Co., Inc.*, 535 F. Supp. 1249, 1259-60 (D. Pa. 1982)).

Additionally, Defendant's failure to respond to this lawsuit suggests an indifference to the unlawful nature of his infringing activity. *Sony BMG Music Entm't v. Rezabala*, No. CIV 08-1520 MCE, 2009 WL 2877601 at *3 (E.D. Cal. Sept. 3, 2009). This unwillingness to appear in this matter has given the Court no assurance that Defendant will cease his infringing activities and makes it difficult for Plaintiffs to prevent further infringement. Based on these facts and the analysis above, the court finds that Plaintiff is entitled to a permanent injunction.

### 2. Statutory Damages

The Copyright Act authorizes statutory damages of $750 to $30,000 per infringed work. 17 U.S.C. § 504(c)(1). In cases where the copyright owner sustains the burden of proving that the infringement was committed willfully, the Copyright Act authorizes enhanced statutory damages of up to $150,000 per infringed work. *Id.* § 504(c)(2). Here, Plaintiffs seek statutory damages[3] of $5,000 for each of the 129 allegedly infringing works for a total of $645,000. *See* Mot. for Default Judgment at 15-17.

The district court is given broad discretion to determine the amount of statutory damages. *Peer Intern. Corp. v. Pausa Records, Inc.*, 909 F.2d 1332, 1336 (9th Cir. 1990). In awarding statutory damages, courts in this District have considered whether the amount of damages requested bears a "plausible relationship" to the plaintiff's actual damages. *See Adobe Systems, Inc. v. Tilley*, No. C 09-1085, 2010 WL 309249, at *5 (N.D. Cal. Jan. 19, 2010) (citing *Microsoft Corp. v. Ricketts*, No. C 06-06712, 2007 WL 1520965, at *4 (N.D. Cal. May 24, 2007). Moreover,

---

[3] Plaintiffs also argue that Defendant's conduct was willful, but appear not to request $150,000 in additional damages for the allegedly willful infringement.

Case No.: 11-CV-01049-LHK
ORDER GRANTING DEFAULT JUDGMENT

in determining the appropriate award, the Court may consider such factors as "the expenses saved and profits reaped by the defendant in connection with the infringements, the revenues lost by the plaintiff as a result of the defendant's conduct, and the infringer's state of mind – whether willful, knowing, or merely innocent." *Lamb v. Starks*, 1997 U.S. Dist. LEXIS 11369 at *6 (N.D. Cal. Jul. 2, 1997).  Plaintiffs have presented evidence that an award of $5,000 for each violation is justified. For example, Plaintiffs have presented evidence that Defendant has developed a series of websites and accounts through which he has become a significant distributor of pirated Korean pop music on the internet.  Defendant also appears to be profiting, albeit indirectly, from distributing the copied music on his website.  Moreover, Plaintiffs have presented evidence that Defendant has been undeterred by attempts to curb his infringing conduct.  Based on facts before the Court, this case warrants an award of damages of $5,000 for each of the 129 violations.  By uploading infringing copies of Plaintiffs' works onto the internet and distributing the copyrighted material, Defendant is denying Plaintiffs revenue to which they are entitled.  The Court therefore awards $645,000 in statutory damages for the violations alleged in Plaintiffs' Complaint.

### 3. Post-Judgment Interest

Finally, Plaintiffs seek post-judgment interest.  Mot. for Default Judgment at 18.  Pursuant to 28 U.S.C. 1961(a), interest "shall be allowed on any money judgment in a civil case recovered in a district court."  Accordingly, Plaintiffs shall be awarded post-judgment interest, which will be calculated "at a rate equal to the weekly average 1-year constant maturity Treasury yield, as published by the Board of Governors of the Federal Reserve System, for the calendar week preceding the date of the judgment."  *Id.*

### III.    Conclusion

For the foregoing reasons, the Court GRANTS the DFSB Plaintiffs' motion for entry of default judgment, issuance of a permanent injunction, statutory damages, and post-judgment interest.

In accordance with the above determinations, the Court hereby orders as follows:

1.  Judgment will be entered in favor of Plaintiffs and against Defendant Kenny Tran on Plaintiffs' claims for direct and contributory copyright infringement.

15

Case No.: 11-CV-01049-LHK
ORDER GRANTING DEFAULT JUDGMENT

**United States District Court**
For the Northern District of California

2.  Defendant shall pay Plaintiffs statutory damages in the amount of $645,000.

3.  Post-judgment interest shall accrue from the date of judgment as provided by 28 U.S.C.
    1961(a).

4.  Defendant Kenny Tran, and his officers, agents, servants, employees, and attorneys, are
    permanently enjoined from copying, displaying, or distributing Plaintiffs' works without
    permission, and from providing internet links or instructions enabling others to access
    infringing copies of Plaintiffs' works.  For a district court's contempt power to apply to an
    injunction, defendants must "receive actual notice of it by personal service or otherwise."
    Fed. R. Civ. P. 65(d)(2).  Plaintiffs are instructed to serve this order on defendant no later
    than **January 21, 2012**.  Plaintiffs also shall file a copy of the proof of service.

**IT IS SO ORDERED.**

Dated: December 21, 2011

_Lucy H. Koh_____
LUCY H. KOH
United States District Judge

Case No.: 11-CV-01049-LHK
ORDER GRANTING DEFAULT JUDGMENT